# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL ZHAO and DEAN MARRIOTT, individually and on behalf of others similarly situated, | Civ. No.: _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, d/b/a VOLKSWAGEN OF AMERICA, INC. and AUDI OF AMERICA, INC., VOLKSWAGEN AG, a German Corporation, and AUDI AG, a German Corporation, | |
| Defendants. | |

Plaintiffs Michael Zhao and Dean Marriott individually and on behalf of all others similarly situated, bring this Complaint against Volkswagen Group of America, Inc, ("Defendant" or "Volkswagen"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

## INTRODUCTION

1.      This consumer class action arises from a latent defect found in the model year ("MY") 2015-2020 Audi A3, MY2015-2019 Audi A3 Quattro, MY2017-2019 Audi A4, MY2017-2019 Audi A4 Allroad, MY2017-2019 Audi A4 Quattro, MY2018-2019 Audi A5 Quattro, MY2018-2019 Audi A5 Sportback, MY 2015-2018 Audi A6, MY 2015-2018 A6 Quattro, MY2015-2018 Audi Q3, MY2015-2018 Audi Q3 Quattro, MY 2018-2020 Audi Q5, MY2016-2020 Audi TT Quattro, MY2017-2019 Audi Q7, MY2015-2019 Audi S3, MY2016-

2020 Audi TTS Quattro, MY2019-2020 Volkswagen Arteon, MY2018-2020 Atlas, MY2015-2019 Volkswagen Beetle, MY2015-2018 Volkswagen Golf, MY2017-2019 Volkswagen Golf Alltrack, MY2015-2019 Volkswagen Golf R, MY2015-2019 Volkswagen Golf SportWagen, MY2015-2020 Volkswagen GTI, and MY2018-2020 Volkswagen Tiguan (hereafter, the "Class Vehicles").[1]

2.     This action arises from Defendants' failure, despite its longstanding knowledge since at least June 28, 2016, to disclose to Plaintiffs and other consumers that the Class Vehicles contain a defectively manufactured thermoplastic water pump module - consisting of a water pump, thermostat (or engine temperature control actuator N493) and integrated sensors (herein collectively referred to as the "Water Pump") - that causes it to prematurely fail ("Water Pump Defect" or "Defect"). When the Defect manifests, it may cause the engines in the Class Vehicles to overheat, resulting in sudden and catastrophic engine failure.

3.     The sudden and unexpected catastrophic engine failure causes the Class Vehicles to unexpectedly stop, posing a danger to the drivers and occupants of the Class Vehicles, and others who share the road with them, as other vehicles can collide with the Class Vehicles after they suddenly stop moving.

4.     Not only did Defendants actively conceal the fact that the Class Vehicles were prone to the Defect, which could result in sudden and unexpected slowing and stopping events and other dangerous situations (and require costly repairs to fix), they did not reveal that the existence of this Defect would diminish the intrinsic and resale value of the Class Vehicles.

---

[1] The MY2015-2020 Audi A3 and MY 2015-2019 Volkswagen Beetle include both the 1.8L engine and 2.0L engine. The MY2015-2018 Volkswagen Golf, MY2017-2019 Volkswagen Golf Alltrack, and MY 2015-2019 Volkswagen Golf SportWagen include only the 1.8L engine, and the remainder of the Class Vehicles contain only the 2.0L engine. Plaintiffs reserve the right to amend the definition of the Class Vehicles after conducting discovery.

5.      Defendants have long been aware of the Defect. Despite their longstanding knowledge, Defendants have been unable or unwilling to adequately repair the Class Vehicles when the Defect manifests.

6.      Many owners and lessees of Class Vehicles have communicated with Defendants and their agents to request that they remedy and/or address the Defect at Defendants' expense. Defendants have failed and/or refused to do so, often conveying to owners and lessees that the Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise. Once the Class Vehicles fall outside the warranty period, Defendants then charge the owners and lessees for the costly repairs necessitated by the Defect.

7.      Defendants have also refused to take any action to correct this concealed defect when it manifests in the Class Vehicles outside of the warranty period. Because the defect can manifest shortly outside of the warranty period for the Class Vehicles—and given Defendants' knowledge of this concealed, safety-related defect—Defendants' attempt to limit the warranty with respect to the engine defect is unconscionable and unenforceable here.

8.      As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

9.      Despite notice and knowledge of the defect from the numerous complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and their own internal records, including pre-sale durability testing, Defendants have not recalled and/or offered an adequate repair to the Class Vehicles, offered

their customers suitable repairs or replacements free of charge, or offered to reimburse their customers who have incurred out-of-pocket expenses to repair the Defect.

10.    Had Plaintiffs and other Class Members known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

11.    Plaintiffs are also informed and believe, and on that basis allege, that as the number of complaints increased, and Class Members grew dissatisfied with the performance of the Class Vehicles, Defendants were forced to acknowledge that the Class Vehicles suffer from an inherent defect.

12.    As a result of the defect and the monetary costs associated with attempting to repair the defect, Plaintiffs and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

13.    This case seeks protection and relief for owners and lessees of Class Vehicles for the harm they have suffered, and the safety risks they face, from Defendants' breaches of express and implied warranties and Defendants' unfair, unlawful, and deceptive trade practices.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendants have advertised in this district, and Defendants have received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district.

16.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of New Jersey and throughout the United States.

## THE PARTIES

### Plaintiff Michael Zhao

17.     Plaintiff Michael Zhao is a citizen of California. Plaintiff Zhao currently resides in San Jose, California, and has at all times pertinent to this Complaint.

18.     Plaintiff purchased a new 2018 Volkswagen Golf R on or about June 28, 2018, from Volkswagen of Downtown LA, an authorized Volkswagen dealership located in Los Angeles, California.

19.     Plaintiff purchased (and still owns) this vehicle, which is used for personal, and/or household use. His vehicle bears Vehicle Identification Number: WVWVF7AU9JW067774.

20.     Prior to purchase, Plaintiff discussed the features of the vehicle with Volkswagen's sales representatives at Volkswagen of Downtown LA and reviewed the vehicle's window sticker. None of these sources disclosed the Defect to Plaintiff.

21.     On or about October 15, 2020, when Plaintiff's vehicle had approximately 76,451 miles on the odometer, Plaintiff observed that engine coolant was leaking from his engine

compartment.

22.     Plaintiff initially contacted Capitol Volkswagen in San Jose, California and informed the service manager of the Defect. The dealership performed a coolant pressure test and found the engine coolant temperature control actuator N493 leaking.  The dealership replaced the Water Pump inclusive of the temperature control actuator and water pump assembly.  Finally, the dealership drained and refilled the Class Vehicle with new coolant and then performed a pressure test to verify that no additional leaks were present at that time.

23.     Plaintiff paid $1,340.82 out of pocket for the parts and labor required to repair the Defect.

24.     Plaintiff Michael Zhao has suffered an ascertainable loss as a result of Defendants' omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

25.     Neither Defendants, nor any of their agents, dealers or other representatives informed Plaintiff of the existence of the Water Pump Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff, Plaintiff would not have purchased his vehicle, or would have paid less for it.

**Plaintiff Dean Marriott**

26.     Plaintiff Dean Marriott is a citizen of California. Plaintiff currently resides in Anaheim Hills, California, and has at all times pertinent to this Complaint.

27.     Plaintiff leased a new 2017 Volkswagen GTI Sport on or about January 12, 2017, from Volkswagen South Coast, an authorized Volkswagen dealership located in Santa Ana, California.

28.     Plaintiff purchased (and still owns) this vehicle, which is used for personal, and/or

6

household use. His vehicle bears Vehicle Identification Number: 3VW447AUXHM033500.

29.     Prior to purchase, Plaintiff discussed the features of the vehicle with Volkswagen's sales representatives at Volkswagen South Coast and reviewed the vehicle's window sticker. None of these sources disclosed the defect to Plaintiff.

30.     On or about March 25, 2021, when Plaintiff's vehicle had approximately 67,460 miles on the odometer, Plaintiff brought his vehicle to OC Tuning in Placentia, California, which confirmed it was leaking engine coolant.

31.     Plaintiff initially contacted OC Tuning for preventative measures, but this resulted in the discovery of the Water Pump Defect. The auto repair shop removed and replaced the Water Pump inclusive of the thermostat housing, union with O-ring seals, and water pump.  OC Tuning then conducted a pressure test and road test to ensure the vehicle was operating correctly.

32.     Plaintiff paid about $650 out of pocket for the parts and services required to repair the Defect.

33.     Plaintiff contacted Volkswagen about a warranty extension two days after the repair and a Volkswagen representative told Plaintiff that his VIN does not qualify for warranty extension because there has not been any litigation that covers his VIN number yet.

34.     Plaintiff Dean Marriott has suffered an ascertainable loss as a result of Defendants' omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

35.     Neither Defendants, nor any of their agents, dealers or other representatives informed Plaintiff of the existence of the Water Pump Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff, Plaintiff would not have purchased his vehicle, or would have

paid less for it.

**<u>Defendants</u>**

36.    Defendant Volkswagen Group of America, Inc. ("Volkswagen USA") is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

37.    Defendant Volkswagen USA is a "wholly owned subsidiary of Volkswagen AG, one of the world's leading automobile manufacturers and the largest carmaker in Europe."[2]

38.    Volkswagen AG is headquartered in Wolfsburg, Germany.

39.    Audi AG is headquartered in Ingolstadt, Germany.

40.    Defendants manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including the Class Vehicles.

41.    At all times material to this Complaint, Defendants have advertised, marketed, offered for sale, sold, offered for lease, leased, and distributed motor vehicles to consumers in New Jersey, as well as throughout the United States, including the Class Vehicles.

42.    Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the Class Vehicles were performed exclusively by Defendants.

43.    Upon information and belief, Defendants develop the owners' manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

44.    Defendants engage in continuous and substantial business in New Jersey, as well as throughout the United States.

---

[2] http://www.volkswagengroupofamerica.com/about (last visited May 7, 2020).

45.    Volkswagen is a duly organized New Jersey corporation with a principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Volkswagen is the parent of Audi of America, Inc. and Volkswagen of America, Inc. Volkswagen manufactures, imports, distributes and/or sells Volkswagen and Audi motor vehicles including all Class Vehicles and also acts as the authorized representative of VWAG and Audi AG in the United States. Volkswagen drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied Class Vehicles and acted, and continues to act, as the warrantor of vehicles constructed by VWAG, Audi AG and Volkswagen of America, Inc. that are sold in the United States. At all relevant times, Volkswagen acted as an authorized agent, representative, servant, employee and/or alter ego of VWAG and Audi AG performing activities concerning but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Volkswagen and Audi vehicles in the United States, including substantial activities that occurred within this jurisdiction. VWAG is the parent company of Volkswagen.

## TOLLING OF STATUTES OF LIMITATION

46.    Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Defect until shortly before this class action litigation was commenced.

47.    Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles, that the Defect is a safety related defect, and that it diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise

applicable to the allegations herein have been tolled.

**FACTUAL ALLEGATIONS**

**A.  The Water Pump in the Class Vehicles**

48.     The Class Vehicles utilize a water pump to assist in cooling the engine while the Class Vehicles are in operation. Without a properly functioning water pump, the engines in the Class Vehicles will overheat, which will eventually result in catastrophic engine failure.

49.     The water pump system in the Class Vehicles also features a thermostat. The thermostat monitors the operating temperature of the engine. When the thermostat reads an optimal operating temperature within the engine, it opens and allows engine coolant to flow between the radiator and the engine in order to maintain the optimal operating temperature range. Conversely, when the engine is running below optimal temperature, the thermostat closes and blocks engine coolant from passing between the radiator and engine in order to allow the engine to build heat and reach optimal operating temperature, such as on cold days.

50.     As the engine starts and begins to run, the engine will generate heat. As the heat builds in the engine then the thermostat within the cooling system begins to open. Once the thermostat has opened, the water pump starts by taking coolant from the radiator and moving it through the engine block and associated components. As the coolant flows through the engine coolant passages, it absorbs heat from the engine thereby allowing the engine to operate at its optimal temperature and avoid overheating.  The coolant then returns back to the radiator, where it is cooled and then can be cycled through the Class Vehicle's engine again. A diagram depicting generally how a water pump and cooling system functions is included below as background.



51.    The Water Pump in the Class Vehicles, that houses the water pump and thermostat, is manufactured from a plastic material. Other vehicle manufacturers utilize different materials for the pump and thermostat housing, such as aluminum.

**B.  <u>The Water Pump Defect</u>**

52.    As described above, the Water Pump in the Class Vehicles is manufactured from plastic. When the Defect manifests, it causes cracks in the plastic body of the water pump housing.

53.    After cracks form, hot engine coolant to leaks out of the water pump and into the thermostat. Once the hot engine coolant comes into contact with the thermostat, it can melt the electrical plug that connects to the engine. This can further cause the thermostat to become stuck open, closed, or in-between the two, which prevents the engine from properly opening or closing the coolant passages within the engine, which in turn prevents the engine from operating at an

optimal temperature and thereby causing the engine to overheat.

54.     Engine coolant can also leak into the power cables connected to the computer that controls the Class Vehicle's engines, which can damage the computer, which is also responsible for regulating the temperature of the engine.

55.     In addition, the leak reduces the amount of engine coolant in the system, eventually resulting in a loss of all coolant in the Class Vehicles. Engine coolant prevents the engines from freezing in cold weather and overheating in warm weather. A loss of engine coolant further impairs the Class Vehicles' ability to regulate the temperature of the engines.

56.     The Water Pumps in the Class Vehicles are not maintenance items and should last for the life the Class Vehicles. Plaintiffs' experiences, as well as the experiences of the Class, demonstrate that the water pumps fail well before the end of the useful life of the Class Vehicles.

**C.  Defendant's Knowledge of the Water Pump Defect**

57.     Upon information and belief, Defendants regularly monitor the NHSTA databases as part of their ongoing obligation to identify potential defects in its vehicles. Examples of the complaints about Class Vehicles can be found below. NHTSA complaints establish that Defendants knew, or should have known, of the Defect *at least* as early June 28, 2016, based on publicly available information through (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) other various sources.

58.     Defendants tout their quality efforts to investors:

Every day, we actively assume and exercise responsibility in relation to the environment, safety and society, and we wish to be a role model in these areas. Integrity, reliability, quality and passion thus form the basis for our work. In this way, we will aim for technological leadership in the industry, ensure our competitive profitability and remain an excellent, reliable and secure employer at

the same time.[3]

59.     Defendants further tell investors about their Together 2025+ Strategy as part of

their quality control efforts:

> Delivering outstanding quality and reliable mobility to customers worldwide is the strategic objective of the Quality Assurance department. As the "voice of the customer" the principle of dual control is relied on in critical company processes; products that are superior to those of the competition are developed within budget requirements. The department's commitment to quality runs the gamut of current and future mobility solutions – vehicles as well as services. Last but not least, all markets will pay close attention to differing regional needs to make a substantial contribution to the Volkswagen Group's sustainable growth.[4]

60.     Through their quality control measures, Defendants knew or should have known

of the Water Pump Defect.

**D.   Complaints by Other Class Members.**

61.     Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed,

the internet is replete with examples of blogs and other websites where consumers have

complained of the exact same Water Pump Defect in the Class Vehicles.[5]

62.     The Office of Defects Investigation within NHTSA conducts defect investigations

and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's

---

[3] https://annualreport2018.volkswagenag.com/servicepages/downloads/files/entire_vw_ar18.pdf (last visited Apr. 4, 2021).

[4] https://www.volkswagenag.com/en/group/strategy.html (last visited Apr. 4, 2021).

[5] *See*, e.g., https://www.carproblemzoo.com/audi/a4/2015/water-pump-problems.php (last visited Apr. 9, 2021); https://www.carproblemzoo.com/audi/q5/2017/engine-and-engine-cooling-problems.php (last visited Apr. 9, 2021); https://www.reddit.com/r/GolfGTI/comments/drna5m/mk775_thermostat_housing_issue_and_coolant_loss/ (last visited Apr. 9, 2021); https://www.vwvortex.com/threads/water-pump-failure-for-future-reference.7573810/ (last visited Apr. 9, 2021); https://www.carproblemzoo.com/volkswagen/tiguan/2018/water-pump-problems.php (last visited Apr. 9, 2021).

highways.[6] All vehicle manufacturers, including Defendants, are legally obligated to routinely

monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive

components should be recalled due to safety concerns, and Defendants thus had knowledge of

any and all NHTSA complaints.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

63.     The following is just a small sampling of the many complaints submitted to

NHTSA by Class Vehicle owners. These publicly-available complaints evidence Defendant's

prior knowledge of the Water Pump Defect, the negative experiences encountered by Class

Members, and the financial burden this places on them.

**Consumer No. 1:**
NHTSA ID Number: 11256340
Date of Incident: August 28, 2019
Complaint Date:  September 18, 2019
Consumer Location:  Gurnee, IL
Summary of Complaint:

AUDI RECALLED 2012-2015 A6 CARS WITH THE 2.0L TFSI ENGINE, ALONG
WITH OTHER AUDI MODELS, DUE TO FAULTY COOLANT/WATER PUMP
(NHTSA RECALL # 18V-229 MFG RECALL #19N3/19N4). FOR THE A6, THE
BRACKETING WAS FOR CARS BUILT FROM 4/4/2011 - 12/22/2014. THE
BRACKETING FOR OTHER MODELS IMPACTED BY THE RECALLED VARIED
FROM 2012-2017. MY A6 2.0 WAS BUILT IN FEB 2015, BUT WAS CLASSIFIED
AS A 2016 MODEL. ON 8/28/2019 MY CHECK ENGINE LIGHT TURNED ON. I
TOOK THE CAR INTO MY AUDI DEALERSHIP FOR SERVICING. THE
TECHNICIAN STATED THAT I HAD A DEFECTIVE COOLANT/WATER PUMP,
AND THAT THE PUMP WAS ABOUT TO BURST AND NEEDED IMMEDIATE
REPLACEMENT. I WAS AWARE OF THE RECALL, AND ASKED IF THE PUMP
ON MY CAR WAS SIMILAR TO THE PUMPS COVERED UNDER THE RECALL,
WHICH THEY CONFIRMED THE PUMP PART NUMBER ON MY CAR
MATCHED THE PUMP PART NUMBER THAT WAS BEING RECALLED.
HOWEVER, SINCE MY CAR WAS CLASSIFIED AS A 2016, IT WAS NOT
COVERED UNDER THE RECALL. IT APPEARS THAT THE BRACKETING THAT
WAS USED TO DETERMINE WHICH CARS SHOULD BE COVERED UNDER THE
RECALL WAS NOT BROAD ENOUGH FOR THE A6 MODELS, AS IT APPEARS
THAT THE DEFECTIVE PUMPS WERE ALSO USED ON SOME 2016 A6 MODELS

---

[6] *See* NHTSA – MOTOR VEHICLE DEFECTS AND SAFETY RECALLS: WHAT EVERY VEHICLE
OWNER SHOULD KNOW, https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm. (last visited
May 12, 2021), Vehicle manufacturers are required by law to report any potential safety defects
to the United States government.

OR CARS BUILT AFTER 12/22/2014.

**Consumer No. 2:**
NHTSA ID Number: 11300976
Date of Incident:  February 25, 2019
Complaint Date:  January 21, 2020
Consumer Location:  San Diego, CA
Summary of Complaint:

ISSUE WITH POORLY ENGINEERED WATER PUMP. MY WATER PUMP
WENT OUT DUE TO A SMALL PLASTIC SEAL MALFUNCTIONING AND
ALLOWING COOLANT TO EXPEL FROM SYSTEM. I AM FORTUNATE I
LEARNED OF THE ISSUE UPON STARTING MY CAR AND COULD
IMMEDIATELY TAKE CARE OF IT, ALTHOUGH LEAVING WORK AT
9PM, LONG AFTER EVERYONE HAS LEFT AND WITH NO AUTOMOTIVE
SHOPS OPEN MADE IT DIFFICULT TO TAKE CARE OF. UPON TALKING
WITH AN INDEPENDENT AUDI/VW SPECIALIST AND DOING MY OWN
RESEARCH I CAME TO FIND THIS WAS AN INCREDIBLY COMMON
PROBLEM. MY CAR HAD ONLY 35K MILES ON IT AND WAS 1 MONTH
OUT OF WARRANTY WHEN THIS OCCURRED. THE AUDI/VW SHOP
SAYS THEY REPLACE 4-5 OF THESE PUMPS PER WEEK! IT CLEARLY IS
A MAJOR ISSUE, ESPECIALLY SINCE A CAR CANNOT FUNCTION AND
IS DANGEROUS TO OPERATE WITHOUT THE COOLING SYSTEM. I WAS
VERY UPSET THAT THE AUDI BRAND WOULD ALLOW A KNOWN
PROBLEM TO CONTINUE, AS IT DOES NOT SEEM LIKE A "LUCK OF THE
DRAW" PART MALFUNCTION.

**Consumer No. 3:**
NHTSA ID Number: 11301301
Date of Incident:  January 22, 2020
Complaint Date:  January 23, 2020
Consumer Location:  Great Neck, NY
Summary of Complaint:

IS AN AUDI Q5 3T AND THE WATER PUMP BROKE, LEADING TO
LEAKING OF THE COOLANT AND OVERHEAT THE ENGINE, THE Q5
WITH 2T ENGINES ALREADY HAVE THE RECALL FOR WATER PUMP
PROBLEMS , BUT AUDI DOES NOT WANT TO APPLY THIS RECALL FR
THE 3T , THIS HAPPENED WHEN I WAS IN THE HIGHWAY AND I HAD
TO POOL OVER.

**Consumer No. 4:**
NHTSA ID Number: 11310473
Date of Incident:  February 15, 2020
Complaint Date:  February 21, 2020
Consumer Location:  Phoenix, AZ
Summary of Complaint:

AFTER RECENT CAR INSPECTION DUE TO RECALL FOR PASSENGER OCCUPANT DETECTION I WAS INFORMED THAT WATER PUMP WAS LEAKING AND IT NEEDS TO BE REPLACED. VEHICLE HAS ONLY 55 000 MILES ON IT. OTHER AUDI MODELS APPEAR TO HAVE THE SAME ISSUE AND THEY HAVE BEEN RECALLED, HOWEVER NO RECALLS HAVE BEEN ISSUED FOR AUDI A3 2015. AS A MANUFACTURER AUDI MUST TAKE THE RESPONSIBILITY FOR FAULTY PARTS AND IT SHOULD REPLACE THEM ON THEIR OWN EXPENSE.

**Consumer No. 5:**
NHTSA ID Number: 11399049
Complaint Date:  March 4, 2021
Date of Incident:  December 23, 2019
Consumer Location:  Humble, TX
Summary of Complaint:

HI THERE I PURCHASED A USED 2017AUDI Q7 3.0T WITH ABOUT 65K MILES IN OCTOBER OF 2019 AND A COUPLE OF WEEKS LATER I NOTICED THAT THE ANTIFREEZE BOTTLE WAS ALWAYS LOW SO I HAD TO KEEP ADDING.THERE WAS NO LEAK IN THE GARAGE BUT YOU CAN CERTAINLY SMELL THE ANTIFREEZE. I CHECKED ON GOOGLE AND OTHER FORUMS AND LEARNED THERE IS A PROBLEM WITH THE WATER PUMP. SO IF OTHER PEOPLE IS HAVING THE SAME PROBLEM I THINK AUDI SHOULD LOOK INTO FIXING IT .THANK YOU

**Consumer No. 6:**
NHTSA ID Number: 11186594
Date of Incident:  February 7, 2019
Complaint Date:  March 13, 2019
Consumer Location:  Maize, KS
Summary of Complaint:

2015 AUDI S3 WATER PUMP FAILED JUST AFTER THE WARRANTY EXPIRED AT 52K MILES REQUIRING $1500 IN REPAIRS. THE WATER PUMP HAD BEEN LEAKING THROUGH THE WEEP HOLE FOR SOME TIME. LEAK WAS DISCOVERED WHILE CAR WAS STATIONARY IN GARAGE. I WOULD EXPECT MORE FROM A QUALITY PERSPECTIVE FROM A LUXURY BRAND LIKE AUDI. THE MECHANIC THAT COMPLETED THE REPAIR SPECIALIZED IN AUDI AND VOLKSWAGENS AND TOLD ME HE REPLACES 2-3 WATER PUMPS A WEEK ON AUDI AND VOLKSWAGEN CARS WITH THIS SAME ENGINE. LIKE I SAID, I WOULD HAVE EXPECTED BETTER QUALITY THAN A PLASTIC WATER PUMP ON A CAR LIKE AUDI.

**Consumer No. 7:**
NHTSA ID Number: 11386719
Date of Incident:  December 29, 2020
Complaint Date:  January 5, 2021

Consumer Location:  Piscataway, NJ
Summary of Complaint:

MY THERMOSTAT HAD A COOLANT LEAK AT 37K, AND THIS WAS
DIAGNOSED AT THE VW DEALERSHIP IN 12/20. MY VEHICLE HAS
NEVER BEEN IN AN ACCIDENT, AND HAS BEEN METICULOUSLY
MAINTAINED AT THE VW DEALERSHIP. UPON DOING SOME
RESEARCH, IT LOOKS LIKE THIS ISSUE IS QUITE COMMON ON 2015-
2018 VW GTIS (AND IT LOOKS LIKE IN ADDITION TO THE
THERMOSTAT, THE WATER PUMP IS OFTEN PRONE TO LEAKAGE) AND
THIS PROBLEM HAS BEEN DOCUMENTED ON VW FORUMS HERE:
HTTPS://WWW.REDDIT.COM/R/GOLFGTI/COMMENTS/DRNA5M/MK775
_THERMOSTAT_HOUSING_ISSUE_AND_COOLANT_LOSS  AND  HERE:
HTTPS://WWW.GOLFMK7.COM/FORUMS/INDEX.PHP?THREADS/FAILED
-THERMOSTAT-HOUSING-COOLANT-LOSS-INFO-GATHERING.368847


THE THERMOSTAT SHOULD NOT BE LEAKING SO EARLY IN THE LIFE
OF A VEHICLE. THIS LEAK CAN LEAD TO A LOSS OF COOLANT, WHICH
IN TURN CAN DAMAGE OR DESTROY THE ENGINE. I CONTACTED VW
OF AMERICA, AND THEY DECLINED TO COVER IT, AS THE VEHICLE
WAS JUST OUT OF WARRANTY. IT LOOKS LIKE THIS IS POTENTIALLY
A DEFECTIVE PART THAT CAN LEAD TO THE VEHICLE NOT WORKING,
AND I WOULD HOPE THAT A RECALL WOULD HELP OTHER OWNERS
PROTECT THEIR VEHICLES.

**Consumer No. 8:**
NHTSA ID Number: 11043353
Date of Incident:  November 1, 2017
Complaint Date:  November 5, 2017
Consumer Location:  Dunbarton, NH
Summary of Complaint:

WATWR PUMP IS LEAKING. THERE WAS A RECALL ON 2011-2014 AND
OBVIOUSLY STILL NOT FIXED

MY VEHICLE HAS 63K AND NOW WATER PUMP IS LEAKING IN SAME
MANNER THE 2011-2014 ARE WHICH WAS RECALLED.

**Consumer No. 9:**
NHTSA ID Number: 11281252
Date of Incident:  February 6, 2019
Complaint Date:  November 20, 2019
Consumer Location:  San Francisco, CA
Summary of Complaint:

WENT  INTO  THE  VOLKSWAGEN  DEALERSHIP  FOR  ROUTINE
MAINTENANCE AT 44,999 MILES ON FEB 6, 2019 AND VOLKSWAGEN

FOUND THAT THE WATER PUMP WAS LEAKING AND SHOULD BE
REPLACED UNDER WARRANTY. THERMOSTAT AND WATER PUMP
REPLACED. NOT TOO LONG AFTER, NOTICED LOW COOLANT LIGHT
GO ON. WENT BACK INTO VOLKSWAGEN FOR MAINTENANCE AT
53,339 MILES ON MAY 16, 2019 AND VOLKSWAGEN CONFIRMED THAT
THE WATER PUMP WOULD HAVE TO BE REPLACED AGAIN UNDER
WARRANTY.

**Consumer No. 10:**
NHTSA ID Number: 11322437
Date of Incident: April 24, 2020
Complaint Date: April 27, 2020
Consumer Location: South Windsor, CT
Summary of Complaint:

THERMOSTAT HOUSING/WATER PUMP FAILED AT 80,000 MILES. THIS
FAILURE COULD HAVE STRANDED ME DURING COVID PANDEMIC
FAR FROM HOME. USE OF A PLASTIC PART IN A CRITICAL ENGINE
APPLICATION IS PROBLEMATIC. REPAIR COST $906 DOLLARS TO
REPLACE THIS HOUSING. VW HAS DENIED COVERAGE FOR THIS
CRITICAL ENGINE COMPONENT.

**Consumer No. 11:**
NHTSA ID Number: 11324232
Date of Incident: May 5, 2020
Complaint Date: May 12, 2020
Consumer Location: Citrus Springs, FL
Summary of Complaint:

VEHICLE STARTED LOSING COOLANT AROUND 25K MILES. VISIBLE
LOSS IN RESERVOIR AND COULD SMELL COOLANT AFTER DRIVING.
AT 30K MILES, VISIBLE PUDDLE OF COOLANT UNDER CAR. CAR WAS
SERVICED AT VW OF OCALA, FL, WHERE THEY REPLACED THE
WATER    PUMP,    THERMOSTAT    HOUSING    AND    RELEVANT
GASKETS/SEALS. THIS MATCHES WHAT DOZENS OF OTHER VW GTI
DRIVERS ARE EXPERIENCING IN THEIR CARS. 30K IS WAY TOO LOW
OF MILES TO HAVE SUCH A MAJOR REPAIR DONE TO THESE CARS,
AND COULD HAVE LED TO PREMATURE ENGINE WEAR/FAILURE BY
OVERHEATING. *TR

**Consumer No. 12:**
NHTSA ID Number: 11324986
Date of Incident: May 18, 2020
Complaint Date: May 18, 2020
Consumer Location: Los Angeles, CA
Summary of Complaint:

MY COOLANT WARNING LIGHT CAME ON AT ABOUT 71K MILES, TO
MY SURPRISE. MY MECHANIC CHECKED ALL FLUID LEVELS WHEN I

LAST HAD THE CAR IN, WHICH WAS ABOUT 6K MILES PRIOR. I CHECKED THE COOLANT LEVEL AND IT WAS WAY BELOW THE MINIMUM LEVEL IN THE RESERVOIR. MY INDEPENDENT MECHANIC DETERMINED IT WAS THE THERMOSTAT HOUSING WHICH IN TURN CAUSED DAMAGE TO THE WATER PUMP AS WELL. THIS RESULTS IN A $980 REPAIR.

AFTER DOING SOME RESEARCH ONLINE, I HAVE DETERMINED THAT THIS PROBLEM HAS AFFECTED OTHER VW GTIS OF THE SAME MODEL GENERATION. THIS IS A FACTORY DEFECT AND SHOULD BE COVERED BY VW BUT MY CAR IS NOW OUTSIDE OF THE FACTORY WARRANTY. I AM SEEKING TO RECOVER THE MONEY I HAVE SPENT OUT OF POCKET AND TO PREVENT THIS FROM HAPPENING TO ANY OTHER OWNERS. THE DETAILS ARE AS FOLLOWS:

THE ISSUE IS LIMITED TO 2015- US MODELS AND 2013- EUROPEAN MODELS, AND SEEMS TO BE RELATED TO THE EA888 REV3 ENGINE THAT IS IN SEVERAL MQB MODELS SOLD BY VW/AUDI.

COOLANT WILL SLOWLY SEEP OUT OF A WEEP HOLE ON THE UNDERSIDE OF THE THERMOSTAT HOUSING. IT DOESN'T SEEM TO BE ENOUGH TO EVER LEAVE A PUDDLE BUT SLIGHT RESIDUE MAY BE SEEN UNDER THE THERMOSTAT HOUSING AND POSSIBLY ON THE OIL PAN. THE LOSS OF COOLANT OFTEN TRIPS THE LOW COOLANT WARNING IF THE LEVEL ISN'T MAINTAINED. DEPENDING ON THE SIZE OF THE LEAK, THE COOLANT DROP CAN EITHER BE GRADUAL OR CATASTROPHIC.

LOSS OF COOLANT HAS ALSO BEEN LINKED TO THE WATER PUMP FAILING. FURTHERMORE, THE ACCESSORY BRACKET GASKET CAN LEAK HOT OIL DOWN ONTO THE THERMOSTAT HOUSING (EVEN AFTER REPAIR) WHICH CAN CAUSE FAILURE. *TR

### E.   Complaints by Owners of Other Vehicles Manufactured by Defendants

64.    Defendants also knew of the Defect through complaints submitted to NHTSA by owners and lessees of other vehicles that utilize the same defective thermoplastic water pump modules. The following is just a small sampling of the many complaints submitted to NHTSA by these owners and lessees, and are complaints related to MY2008-2014 Volkswagen and Audi vehicles. These publicly-available complaints evidence Defendant's prior knowledge of the

Water Pump Defect, the negative experiences encountered by Class Members, and the financial

burden this places on them.

**Volkswagen**

**Consumer No. 13:**
NHTSA ID Number: 11034372
Date of Incident:  October 1, 2017
Complaint Date:  October 18, 2017
Consumer Location:  Unknown
Summary of Complaint:

TL* THE CONTACT OWNS A 2013 VOLKSWAGEN CC. WHILE ATTEMPTING
TO START THE VEHICLE, THE CHECK COOLANT WARNING INDICATOR
ILLUMINATED. WHILE INSPECTING UNDER THE HOOD, IT WAS
DISCOVERED THAT THE COOLANT RESERVOIR WAS NEARLY EMPTY. THE
VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED
THAT THE WATER PUMP HAD CRACKED, CAUSING COOLANT TO LEAK. THE
VEHICLE WAS NOT REPAIRED. THE MANUFACTURER AND LOCAL DEALER
(WINNER VOLKSWAGEN IN DOVER, DELAWARE) WERE NOTIFIED OF THE
FAILURE, BUT NO ASSISTANCE WAS OFFERED. THE FAILURE MILEAGE
WAS 63,000.

**Consumer No. 14:**
NHTSA ID Number: 10896424
Date of Incident:  August 15, 2016
Complaint Date:  August 16, 2016
Consumer Location:  Los Angeles, CA
Summary of Complaint:

ON FOUR SEPARATE OCCASIONS THE CAR HAS LOST POWER WHILE IN
DRIVE ON CITY STREETS. FIRST OCCASION APRIL 23 2014 THE
COOLANT/WATER PUMP FAILED AS DID FUSE. MAY 23 FUEL PUMP FAILED
AND FUEL PUMP PANEL. JULY 28 CAR DIED WHILE DRIVING DUE TO
FAULTY FUEL INJECTOR. YESTERDAY AUG 15 2016 CAR AGAIN LOST
POWER WHILE DRIVING ON CITY STREETS AND HAD TO BE TOWED
(FOURTH TIME WITH LESS THAN 50K MILES) TO DEALER. I AM AWAITING
DIAGNOSIS BUT NO LONGER FEEL SAFE IN THE VEHICLE. TWICE I WAS
FORTUNATE THAT POLICE OFFICERS SHOWED UP AND WERE ABLE TO
PUSH MY CAR OUT OF TRAFFIC AND TO SAFETY BUT AT THIS POINT I
BELIEVE VW SHOULD TAKE ACTION TO REPLACE THE CAR AS IT HAS
CLEARLY PROVEN A SAFETY HAZARD FOR MYSELF AND OTHERS ON THE
ROAD. RESPECTFULLY SUBMITTED, [XXX]

**Consumer No. 15:**
NHTSA ID Number: 10944666
Date of Incident:  December 26, 2016

Complaint Date:  January 12, 2017
Consumer Location:  OVERLAND, MO
Summary of Complaint:
TIGUAN. PURCHASED THE CAR IN DECEMBER 2015 REPLACED THE WATER
PUMP IN FEBRUARY 2016 AND AGAIN IN JANUARY 2017. THE WATER PUMP
ON THIS CAR HAS BEEN REPLACED 4 TIMES IN ITS LIFETIME. VW SHOULD
ISSUE A RECALL AND OFFER EXTENDED WARRANTIES TO ALL OWNERS OF
ITS CARS.

**Consumer No. 16:**
NHTSA ID Number: 10980782
Date of Incident:  April 24, 2017
Complaint Date:  April 26, 2017
Consumer Location:  WINTER GARDEN, FL
Summary of Complaint:

OIL SEALS LEAKING OIL ALL OVER ENGINE, MAJOR CARBON BUILD UP
FAILING AXLES. I WAS DRIVING ON THE ROAD AND THE CAR MADE A
MAJOR THUD AND CHECK ENGINE LIGHT CAME ON. TOOK CAR TO DEALER
NEXT DAY AND THEY FOUND ALL SEALS ON THE ENGINE ARE LEAKING
OIL AND WATER PUMP HAS FAILED AND MAJOR CARBON BUILD UP IN
ENGINE. FOUND OIL ON GROUND OF MY GARAGE. FRONT SUSPENSION
KNOWN TO MAKE CRUNCHING SOUNDS WHEN GOING OVER MAJOR
BUMPS WHEN COLD

**Consumer No. 17:**
NHTSA ID Number: 11010654
Date of Incident:  July 25, 2017
Complaint Date:  July 25, 2017
Consumer Location:  BEAVER FALLS, PA
Summary of Complaint:

TURBO FAILURE, WATER PUMP FAILURE, AND REAR MAIN SEAL FAILURE.
ALL RIGHT AFTER HITTING 100K MILES. NEARLY 5K IN TOTAL REPAIR
COSTS. I'VE EXPERIENCED REDUCED PERFORMANCE BECAUSE OF THE
TRURBO ISSUES. ISSUES PULLING OUT ON TO STREETS, OR ON RAMPS. I
OPTED OUT OF THE REPAIR AT THE TIME DUE TO VW WANTING 2.2K TO
REPLACE THE TURBO, WHICH SHOULD BE ALMOST A LIFETIME PART. I
THEN TOOK IT BACK 2 WEEKS LATER FOR THE WATER PUMP WHICH WAS
LEAKING FLUID EVERYWHERE, THEY REPLACED THE WATER PUMP BUT
FAILED TO MENTION THAT THE REAR MAIN SEAL WILL NEED REPLACED
AS WELL. REAR MAIN SEAL IS COMMON, AND COULD RESULT IN A FIRE IF
ENOUGH OIL LEAKS ON TO THE EXHAUST

**Consumer No. 18:**
NHTSA ID Number: 11031471
Date of Incident:  September 27, 2017

Complaint Date:  October 3, 2017
Consumer Location:  VIRGINIA BEACH, VA
Summary of Complaint:

WATER PUMP FAILED ON 3 SEPARATE OCCASIONS. HAD THE FUEL PUMP
FAIL, AIR INTAKE, EXCESS CARBON BUILD UP ON VALVES, AND NOW
TOTAL ENGINE FAILURE. THE ROCKER ARM FOR NUMBER 3 CYLINDER
BROKE IN HALF CAUSING TOTAL ENGINE FAILURE. VEHICLE WAS IN
MOTION DURING ALL OF THE EVENTS. VW WON'T ASSIST IN REPAIRS EVEN
THOUGH THE 2.0 TSI ENGINE HAS A WELL DOCUMENTED HISTORY OF
ENGINE FAILURE WHEN THE TIMING CHAIN TENSIONER FAILS. THEY
WON'T FIX IT UNLESS IT IS UNDER WARRANTY. IF YOU HAVE THIS MODEL
OF ENGINE GET IT CHECKED BEFORE YOU ARE OUT AN ENGINE.

**Consumer No. 19:**
NHTSA ID Number: 11035870
Date of Incident:  September 16, 2017
Complaint Date:  October 23, 2017
Consumer Location:  Unknown
Summary of Complaint:

I HAVE SPENT 1000 ON THE WATER PUMP REPAIR, PURCHASED 2 LIGHTS AT
110. AN THEWATER PUMP WENT OUR AGAIN FOR THE SECOND TIME IN 4
MONTHS.THE AIR BAG RECALL HAS BEEN RECALLED 3TIMES ALREADY I
HAVE HAD TO TAKE IT IN. LIKE THIS VEHICLE HAS HAD TO MANY
PROBLEMS ELECTRICAL . WHEN THE WATER PUMP OUT THE CAR WAS
STATIONARY

**Consumer No. 20:**
NHTSA ID Number: 11064763
Date of Incident:  December 31, 2017
Complaint Date:  January 24, 2018
Consumer Location:  KILLEEN, TX
Summary of Complaint:

CAR WOULDNT GO OVER 40. HAVING HARD TIME GOING AND NOTICE
LEAK UNDER THE FRONT OF THE CAR. TOOK TO THE DEALER SAID I NEED
A NEW WATER PUMP. IDK IF THAT WAS THE CAR WOULD GO OVER 40 AND
HAVE HARD TIME DRIVING. I WAS DRIVING CITY STREET. HAVING TO
STOP FOR RED LIIGHTS.

**Consumer No. 21:**
NHTSA ID Number: 11079744
Date of Incident:  December 11, 2017
Complaint Date:  March 16, 2018
Consumer Location:  PALM BAY, FL
Summary of Complaint:

I BOUGHT THE CAR IN OCTOBER 2017 AND HAD TO BRING IT BACK FEW DAYS LATER BECAUSE THE WATER PUMP WAS LEAKING. THEY FIXED IT AND COUPLE WEEKS LATER I HAD TO REPLACE THE HEATER CORE COUPLINGS BECAUSE THEY WERE LEAKING. NOW IN THE BEGINNING OF DECEMBER 2017 I WAS COMING BACK FROM ORLANDO FL FROM THE DEALERSHIP BECAUSE I HAD TO GET MY TITLE FROM THEM, THE CAR BROKE DOWN COMPLETELY ON THE HIGHWAY. CHECK ENGINE LIGHT AND A EPC LIGHT CAME ON AS WELL. I HAD TO GET IT TOWED BACK TO MY HOUSE AND HAD MULTIPLE MECHANICS STOP BY AND INSPECT THE CAR BUT THERE WAS NOTHING THEY COULD DO BECAUSE OF THE TOOLS THEY DIDN'T HAVE. I EVEN CALLED OTHER MECHANIC SHOPS THAT SPECIALIZE IN EUROPEAN CARS. I FINALLY HAD THE CAR TOWED TO THE VOLKSWAGEN DEALERSHIP & THEY GAVE ME A QUOTE THAT WAS MORE THAN THE VALUE OF THE CAR. I ALSO GAVE THE DEALERSHIP A CALL WHERE I PURCHASED THE CAR FROM AND THEY TOLD ME THEY WOULD GET BACK TO ME BUT NEVER DID UNTIL I CALLED BACK WITH MY MOTHER AND THEY SAID IT HAS NO WARRANTY. THEN I CALLED THE WESTLAKE FINANCE COMPANY FOR THE CAR AND THEY TOLD ME TO GO THROUGH THE DMV. THE CAR IS NOT DRIVEABLE.

**Consumer No. 22:**
NHTSA ID Number: 11083347
Date of Incident:  March 27, 2018
Complaint Date:  April 4, 2018
Consumer Location:  STAFFORD, VA
Summary of Complaint:

CAR OVERHEATED AND BROKE DOWN ON ROUTE 95 IN VIRGINIA DUE TO A DEFECTIVE WATER PUMP. THIS IS THE THIRD WATER PUMP IN LESS THAN 3 YEARS AND 6332 MILES THAT HAS GONE BAD IN THIS VEHICLE. THE CURRENTLY HAS 28314 MILES. THE FIRST WATER PUMP FAILED 11-20-15 WITH 21982 MILES. THE SECOND PUMP FAILED 2-27-16 WITH 22767 MILES. THE THIRD PUMP FAILED 3-27-18 WITH 28314 MILES. THERE IS NO REASON FOR WATER PUMP FAILURES THIS FREQUENTLY. ALL SERVICE WAS DONE AT VOLKSWAGEN OF FREDERICKSBURG 540-898-1600.

**Consumer No. 23:**
NHTSA ID Number: 11062507
Date of Incident:  January 10, 2018
Complaint Date:  January 12, 2018
Consumer Location:  SAN FRANCISCO, CA
Summary of Complaint:

IN JAN 2018 WITH LESS THEN 58K MILES ON IT MY 2012 TIGUAN STARTED LOSING COOLANT. I WAS DRIVING AND THE THERMOSTAT SENSOR WENT OFF, I PULLED OVER AND FOUND THE COOLANT LEVEL WAS VERY LOW. THE PROBLEM WAS DIAGNOSED AS A LEAKING WATER PUMP WHICH HAD

TO BE REPLACED, AT THE SAME TIME THE SERPENTINE BELT AND
TENSIONER ALSO NEEDED TO BE REPLACED. I CALLED VW AND THEY
SAID BECAUSE MY CAR WAS ACTUALLY BOUGHT IN 2011 THAT THE 5
YEAR / 60K POWERTRAIN WARRANTY WHICH WOULD HAVE COVERED
THIS NO LONGER APPLIED (E.G. BECAUSE IT WAS AFTER 5 YEARS FROM
SALE) AND THERE WAS NOTHING THEY WOULD DO FOR ME (E.G. I WAS ON
MY OWN TO FIX IT).

THE REPAIR WAS ~$1300 WHICH IS VERY FRUSTRATING ON A CAR WITH
LOW MILES THAT IS DRIVEN CAREFULLY AND WELL CARED FOR. THE
MORE FRUSTRATING THING IS THAT VW HAD THE EXACT SAME ISSUE ON
THEIR GTI MODELS FROM THESE EXACT SAME YEARS AND ISSUED A
RECALL ON THESE WATER PUMPS ( SEE:
HTTPS://HUMBLEMECHANIC.COM/WATER-PUMP-RECALL-MK6-GTI-
PODCAST-EPISODE-88/ ) BUT WERE UNWILLING TO DO ANYTHING FOR ME
WHEN I HAD THE SAME PROBLEM WITH THE TIGUAN.

**Consumer No. 24:**
NHTSA ID Number: 11079808
Date of Incident:  March 12, 2018
Complaint Date:  March 16, 2018
Consumer Location:  NOVI, MI
Summary of Complaint:

TL* THE CONTACT OWNS A 2013 VOLKSWAGEN JETTA. WHILE THE
VEHICLE WAS STATIONARY, THE ENGINE COOLANT INDICATOR
ILLUMINATED. RALPH THAYER VOLKSWAGEN IN LIVONIA, MICHIGAN
WAS MADE AWARE OF THE FAILURE AND STATED THAT THE WATER PUMP
NEEDED REPLACEMENT, ALONG WITH A COOLANT FLUSH. THE VEHICLE
WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF
THE FAILURE. THE FAILURE MILEAGE WAS 109,719.

**Consumer No. 24:**
NHTSA ID Number: 11098106
Date of Incident:  May 1, 2018
Complaint Date:  May 26, 2018
Consumer Location:  NOVI, MI
Summary of Complaint:

MY 2011 GTI HAS HAD CONSTANT ISSUES SINCE JUST AFTER WARRATNY
ENDING. SINCE PURCHASING A NEW 2011 GTI I HAVE HAD A WATER PUMP
CHANGED TWICE, INTAKE MANIFOLD REPLACED FOUR TIMES , IGNITION
COILS AND DECARB SERVICE TWICE IN LESS THAN 130K MILES IS CAUSE
FOR CONCERN AND SHOWS A LACK OF RELIABILITY OF PARTS AND/OR
WORKMANSHIP.

DURING SERVICES AT

50005 MIL - FOUND CODE FAULTS RELATING TO MANIFOLD. TECHNICIAN RESET CODES.

57711 MIL - MISFIRES OCCURRED AND RETURNED TO SERVICE. FOUND ISSUES WITH FAULTY MANIFOLD. THIS WAS 4MONTHS AFTER PREVIOUS SERVICE. MANIFOLD REPLACED.

69119 MIL - MULTIPLE FAULTS FOUND. MISFIRES. MANIFOLD REPLACED, FAULTS STILL PRESENT. FOUND INTERNAL AIR LEEK. REPLACED OIL SEPARATOR.

83991 MIL - MISFIRES ON ALL CYLINDERS. LEAK IN INTAKE MANIFOLD. REPLACED INTAKE MANIFOLD. REPLACED FAULTY FUEL PUMP. DECARB RECOMMENDED AND SERVICED.

102300 MIL - MULTIPLE MISFIRES. INTAKE MANIFOLD LEAK. REPLACED INTAKE MANIFOLD, WAS TOLD THAT THERE IS A LARGE CARBON BUILD AND NEED TO DECARB. REPLACED ALL FOUR INGNITTION COILS.

119406 MIL - MULTIPLE MISFIRES. REPLACED ALL FOUR IGNITION COILS. WAS TOLD THAT THE ENGINE NEEDED A DECARB..AGAIN.

128700 MIL - MULTIPLE MISFIRES, MANIFOLD FAULTY, TOLD TO REPLACE MANIFOLD, CAMSHAFT TIMING ISSUES. HAS JUMPED TOOTH.

THESE ARE ALL REPEATED AND KNOWN ISSUES THAT HAVE NOT BEEN RECTIFIED AND HAVE CONTRIBUTED TO CURRENT ISSUES AND MANY THOUSANDS OF DOLLARS IN REPAIRS. ALSO HAD THE SERPENTINE BELT REPLACED AT 110000 MILES AS IT CAME SHREDDED ENTERING THE FREEWAY.

ALL MAJOR SERVICES WERE COMPLETED AT A VW DEALERSHIP.

IT IS WORTH NOTING WE HAVE TWO 2011 GTI'S. THE OTHER VEHICLE HAD A BROKEN CAMSHAFT AT 96,000 MILES.

**Consumer No. 25:**
NHTSA ID Number: 11101720
Date of Incident:  June 5, 2018
Complaint Date:  June 13, 2018
Consumer Location:  SEATTLE, WA
Summary of Complaint:

WATER PUMP FAILURE, TWO FAILURES IN 8 YEARS, THE SECOND FAILURE WITH 20,000 MILES ON THE PUMP. IT FAILED WHILE I WAS DRIVING AND CAR BEGAN TO OVERHEAT.

**Consumer No. 26:**
NHTSA ID Number: 11121237
Date of Incident:  August 15, 2018
Complaint Date:  August 21, 2018

Consumer Location:  ARGYLE, TX
Summary of Complaint:

I EXPERIENCED A LEAK FROM THE WATER PUMP WHILE THE CAR WAS
STATIONARY.

I TOOK IT TO MY MECHANIC WHO STATED THAT HE ALWAYS SEES THIS
TYPE OF PROBLEM WITH THE VOLKSWAGENS BECAUSE VOLKSWAGEN
USES PLASTIC PARTS AND THESE PARTS ARE OFTEN AROUND THE HIGHLY
HEATED AREAS IN THE ENGINE THEREFORE THEY FAIL.

I BOUGHT THIS CAR FOR MY DAUGHTER WHO WILL BE DRIVING BACK
AND FORTH TO COLLEGE AND I AM EXTREMELY CONCERNED ABOUT HER
SAFETY IF VW IS USING INADEQUATE PARTS IN THEIR CARS. ALSO, REPAIR
COSTS ARE UNIMAGINABLE, $1000, ONLY TO BE REPLACED WITH THE
SAME PLASTIC PART.

I ALSO HAD TO REPLACE ONE OF THE TAIL LIGHT CASINGS BECAUSE IT
TOO WAS MADE OF PLASTIC AND THE TAIL LIGHT LAMP BURNED INTO
THE PLASTIC AND CEASED TO LIGHT.

WE HAVE ALSO HAD THIS CAR IN FOR TWO DIFFERENT PARTS RECALLS,
AIRBAG X 2, AND FUEL PUMP CONTROL MODULE.


**Consumer No. 27:**
NHTSA ID Number: 11193943
Date of Incident:  November 18, 2016
Complaint Date:  April 4, 2019
Consumer Location:  NEW BERN, NC
Summary of Complaint:

WATER PUMP MALFUNCTIONS AND OIL LEAKS LEADING TO WATER PUMP
MALFUNCTIONS THAT OVER HEAT THE ENGINE AND CAUSE SIGNIFICANT
ENGINE DAMAGE. THREE WATER PUMPS IN THREE YEARS AND
ULTIMATELY BLOWN ENGINE.

**Consumer No. 28:**
NHTSA ID Number: 11244428
Date of Incident:  August 14, 2019
Complaint Date:  August 16, 2019
Consumer Location:  ALBUQUERQUE, NM
Summary of Complaint:

HAVE HAD 3 VW WATER PUMP FAILURES WITHIN THE PAST 11 MONTHS.
THE ORIGINAL WATER PUMP FAILED IN SEPTEMBER 2018; THE
REPLACEMENT FAILED IN JUNE 2019; AND ANOTHER REPLACEMENT
FAILED IN AUGUST 2019. ALL INSTALLED AT AAA APPROVED MECHANIC
SHOPS. COOLANT WOULD RUN LOW AND WHEN ALERTED TO THIS, IT
COULD BE OBSERVED FLOWING ONTO THE GROUND WHILE THE VEHICLE

ENGINE WAS RUNNING AND THE CAR IN MOTION.

**Consumer No. 29:**
NHTSA ID Number: 11292323
Date of Incident:  November 10, 2018
Complaint Date:  December 31, 2019
Consumer Location:  CUPERTINO, CA
Summary of Complaint:

THE WATER PUMP HAS BEEN CRACKED, LEAKING THE COOLANT. THE CAR
ENGINE WAS OVERHEATED BUT DIDN'T LEAD TO ACCIDENTS IN MY CASE.
VW GROUP IS PRODUCING THE WATER PUMP OUT OF PLASTIC, WHICH
EVENTUALLY CRACKS FOR MANY OF VW AND AUDI CAR OWNERS, AND
COULD LEAD TO THE ROAD ACCIDENT INDIRECTLY

**Consumer No. 30:**
NHTSA ID Number: 11330749
Date of Incident:  October 1, 2019
Complaint Date:  June 25, 2020
Consumer Location:  ORANGE CITY, FL
Summary of Complaint:

GRADUAL COOLANT LEAK WITH DEALERSHIP KNOWLEDGE UPON SALE OF
THE CAR (44,000 MILES). REFILL OVERFLOW EVERY 8 TO 10 MONTHS. LEAK
UNKNOWN. HAD TO INCREASE REFILLING GRADUALLY OVER TIME,
THOUGHT IT WAS DUE TO USE FROM WORK IN 2016. INCREASED TO ONCE
EVERY FEW MONTHS 2017. FILL EVERY WEEK OR TWO FROM 2018 TO
2019....DAILY SINCE LATE 2019 TO NOW. ENGINE DOES NOT OVER HEAT.

REFILLING OVER FLOW COOLANT TANK EVERY TIME I NEED TO DRIVE
THE CAR. I HAVE TO TURN ON THE CAR, POP THE HOOD, AND SEE HOW
MUCH IT GOES BELOW THE MINIMUM LINE. THEN FILL TO MAXIMUM.
DAILY REFILL STARTED AROUND OCTOBER 2019.

RECEIVED TRANSMISSION FLUSH AND FUEL INDUCTION SERVICE.
MECHANIC SAID I NEED A WATER PUMP AND RADIATOR. HE THOUGHT
THE RECALL WOULD COVER MY CAR BUT SAID MY VIN WASN'T SHOWING
A DEFECT. I'M NOT SURE WHY IT'S NOT. DEALERSHIP KNEW ABOUT THE
LEAK UPON THE SALE OF THE CAR.

HELP!! I HAD NO IDEA THE LEAK WAS GOING TO GET WORSE. THE
DEALERSHIP MADE IT SOUND LIKE SOMETHING MINOR I JUST HAD TO
DEAL WITH. *TR

**Consumer No. 31:**
NHTSA ID Number: 11398578
Date of Incident:  February 18, 2021
Complaint Date:  March 1, 2021

Consumer Location:  HERCULES, CA
Summary of Complaint:
IM ON MY WAY TO WORK ON THE HIGHWAY GOING UPHILL AND THE
TEMPERATURE RED LIGHT STARTS FLASHING. I DECIDED TO SLOW DOWN
BECAUSE THE FLASHING LIGHT HAD ME CONCERNED. THE TEMPERATURE
GAUGE STAYED AT NORMAL POSITION SO I WAS ABLE TO BRING IT HOME.
I WAITED AWHILE AND THEN CHECKED UNDER THE HOOD FOR COOLANT
LEVEL AND IT WAS DOWN TO THE BOTTOM BARELY ANY LEFT. SO I
BOUGHT THE RECOMMENDED COOLANT BY VW AND FILLED IT UP TO
LEVEL. I DROVE THE NEXT DAY AND PARKED IN MY DRIVE WAY AND
LATER THAT DAY I SAW COOLANT PUDDLE ON CONCRETE DRIPPED FROM
ENGINE. I SUSPECT IT'S THE WATER PUMP AGAIN. I HAD THIS PROBLEM
WITH THIS CAR BEFORE WITH COOLING SYSTEM TWICE. THE FIRST TIME
THE DEALERSHIP DEALT WITH IT BY REPLACING WATER PUMP WHILE IT
WAS UNDER WARRANTY. THE SECOND TIME I TOOK IT TO MECHANIC AND
THEY WERE ABLE TO REPLACE WATER PUMP AND FIX THE PROBLEM. I
WAS ABLE FIND THE LEAK AND TAKE PICTURES. IT SEEMS TO BE LEAKING
NEAR THE WATER PUMP. SO RIGHT NOW I'M FILLING COOLANT ALMOST
EVERYDAY UNTIL I CAN GET TO THE DEALERSHIP

**Audi**

**Consumer No. 32:**
NHTSA ID Number: 10877055
Date of Incident:  June 27, 2016
Complaint Date:  June 28, 2016
Consumer Location:  SCOTCH PLAINS, NJ
Summary of Complaint:
WE BOUGHT TWO 2009 AUDI A4'S FOR OUR CHILDREN. LAST MONTH ONE
WENT TO THE THE DEALER BECAUSE THE ENGINE FAILED AND NEEDED
TO BE REBUILT BECAUSE OF OIL CONSUMPTION ISSUE, WHILE THERE THE
DEALER INFORMED US THAT THE WATER PUMP WAS FAILING AND
NEEDED TO BE REPLACE. I QUESTIONED THE DEALER AND CALLED AN
INDEPENDENT AUDI MECHANIC, BOTH SAID THE SAME THING, WE WERE
LUCKY IT LASTED THIS LONG AUDI HAS KNOWN FROM THE BEGINNING
THAT THIS WATER PUMP IS FLAWED AND SHOULD HAVE BEEN RECALLED.
NOW FAST-FORWARD TO YESTERDAY, MY DAUGHTER TOOK HERS IN FOR
AN OIL CHANGE AND THE MECHANIC, A DIFFERENT INDEPENDENT AUDI
MECHANIC, SAID CAR WAS FINE EXCEPT WATER PUMP WAS FAILING!!!! HE
SAID ITS A KNOWN PROBLEM AND AUDI IS FULLY AWARE OF IT, ITS A
$1200 REPAIR NOT INCLUDING THE SUGGESTED TIMING BELT CHANGE.
TWO CARS, SAME EXACT MODEL AND ENGINE, THIS CANNOT BE A
COINCIDENCE. PLEASE HELP!!!

**Consumer No. 33:**
NHTSA ID Number: 11102111
Date of Incident:  June 14, 2018
Complaint Date:  June 15, 2018

Consumer Location:  JAMAICA, NY
Summary of Complaint:
TL* THE CONTACT OWNS A 2013 AUDI A4. WHILE DRIVING 15 MPH, A
WARNING INDICATOR ILLUMINATED FOR A COOLANT LEAK. THE VEHICLE
WAS TAKEN TO THE DEALER (AUDI OF LYNBROOK, 855 SUNRISE HWY,
LYNBROOK, NY 11563) WHERE IT WAS DIAGNOSED THAT THE WATER
PUMP FAILED AND NEEDED REPLACEMENT. THE DEALER STATED THAT
THE CONTACT WOULD BE RESPONSIBLE FOR THE REPAIR COST. THE
CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER:
18V229000 (ENGINE AND ENGINE COOLING). THE MANUFACTURER WAS
MADE AWARE OF THE FAILURE, BUT REFUSED TO REIMBURSE THE
CONTACT FOR THE REPAIRS. THE VEHICLE WAS NOT REPAIRED. THE
FAILURE MILEAGE WAS 98,400

**Consumer No. 34:**
NHTSA ID Number: 11102635
Date of Incident:  June 3, 2018
Complaint Date:  June 19, 2018
Consumer Location:  MINNETRISTA, MN
Summary of Complaint:
MY CAR HAS HAD THE ADD OIL LIGHT ON MANY TIMES TO WHICH I HAVE
TAKEN IT TO THE DEALER. FIRST TIME THEY TOLD ME IT WAS A WATER
PUMP FAILURE. I REPLACED AND PAID FOR THE WATER PUMP. SECOND
TIME A YEAR LATER I RETURNED TO HEAR THAT THE WATER PUMP
FAILED AGAIN ONLY THIS TIME IT WAS THE CAM BEARING LADDER THAT
FAILED WHICH IN TURN CAUSED THE WATER PUMP TO FAIL. BOTH TIMES I
ASKED IF THE WATER PUMP IS REPLACED SHOULD I REPLACE THE TIMING
BELT, I AM TOLD IT IS A TIMING CHAIN AND DOES NOT NEED TO BE
REPLACED. THEN THE LIGHT COMES ON AGAIN I TAKE IT BACK TO THE
DEALER TO BE CHECKED THEY SAY IT IS FINE. TWO MONTHS LATER THE
LIGHT COMES BACK ON, WHILE DRIVING TO THE GAS STATION TO GET OIL
I TURN ENGINE OFF ONLY TO HAVE IT TURN BACK ON RUNNING SUPER
ROUGH. CAR THEN WILL NOT START. I AM NOW TOLD THAT IT WAS THE
TIMING BELT FAILURE AND THAT THE TENSIONER ROD BROKE. I AM NOT
THE ONLY ONE WITH THIS ISSUE.
HTTPS://WWW.AUDIFORUMS.COM/FORUM/GENERAL-TECH-50/A5-2-0T-
TIMING-CHAIN-FAILURE-215409

**Consumer No. 35:**
NHTSA ID Number: 11129877
Date of Incident:  September 14, 2018
Complaint Date:  September 17, 2018
Consumer Location:  BREA, CA
Summary of Complaint:
TL* THE CONTACT OWNS A 2012 AUDI Q5. WHILE THE VEHICLE WAS AT
PENSKE AUDI WEST COVINA (2016 E GARVEY AVE S, WEST COVINA, CA
91791, 866-713-0688) FOR ROUTINE MAINTENANCE, THE DEALER

DISCOVERED THAT THE WATER PUMP AND ASSEMBLY HAD FRACTURED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND ADVISED THE CONTACT TO CALL NHTSA. THE FAILURE MILEAGE WAS APPROXIMATELY 42,000. THE VIN WAS UNKNOWN. *TT

**Consumer No. 36:**
NHTSA ID Number: 11133152
Date of Incident:  September 2, 2016
Complaint Date:  October 3, 2018
Consumer Location:  CYPRESS, CA
Summary of Complaint:
IN SEP 2016 MY 2013 AUDI A5 STARTED SMOKING AND OVERHEATING WHILE DRIVING ON THE FREEWAY. I DROVE MY CAR HOME AND SEARCHED FOR A REPUTABLE AUTO SHOP IN MY CITY THAT I DROVE MY CAR TO. MY VEHICLE WAS ANALYZED AND INSPECTED TO FIND OUT THAT THE COOLANT/WATERPUMP NEEDED TO BE REPLACED, WHICH MY CAR WAS NO LONGER UNDER WARRANTY. AT THIS MOMENT I JUST LEFT MY CAR AT THIS AUTO REPAIR SHOP AS IT WAS MY ONLY VEHICLE AND NEEDED REPAIRED ASAP.

WITHIN THE LAST YEAR AND VERY RECENTLY THEIR HAVE BEEN MANY RECALLS RELATIVE TO OVERHEATING COOLANT/WATER PUMP ISSUES CAUSING OVERHEATING AND POSSIBLY SET ON FIRE. I HAD IT REPAIRED AT THE AUTO SHOP, WHICH COSTED ME NEARLY $1200! I FOUND THIS ABSURD AS MY VEHICLE WAS ONLY 3.5 YEARS OLD WITH AN OVERHEATING PROBLEM. IS THERE ANY WAY I CAN GET THIS RESEARCHED AND REIMBURSED BY THE MANUFACTURE AS MY ISSUE HAPPENED PRIOR TO RECALLS WERE PUBLISHED? I HAVE ATTACHED A REPAIR INVOICE FOR YOUR REVIEW. THANK YOU


**Consumer No. 37:**
NHTSA ID Number: 11139928
Date of Incident:  September 17, 2018
Complaint Date:  October 12, 2018
Consumer Location:  DEL MAR, CA
Summary of Complaint:
I JUST HAD MY FUEL DOOR ACTUATOR REPLACED ON MY 2013 AUDI A5 WITH LESS THAN 44,500 MILES ON IT IN SEPTEMBER 2018. I AM HAVING A VERY DIFFICULT TIME UNDERSTANDING WHY MY FUEL DOOR ACTUATOR NEEDED TO BE REPLACE WITH SO LOW MILEAGE. THE CAR HAS A RANGE OF 455 MILES AFTER A FILL UP THE PART COST $405.85 INCLUDING A SHIPPING CHARGE. THIS MEANS IT COST ME $4.17 TO OPEN AND CLOSE THE LID AFTER A FILL UP. MY ARGUMENT IS THAT THE PART WAS DEFECTIVE AND IT SHOULD BE REPLACED FOR FREE. I SENT THE PART BACK TO AUDI FOR REVIEW. AUDI DECLINE TO ACCEPT RESPONSIBLITY FOR THE DEFECTIVE PART. HOWEVER, I AM NOT FINISH WITH THIS CASE. I

SENT AND EMAIL TO THE CEO OF VOLKSWAGEN IN NORTH AMERICA AND
GERMANY IN REGARD TO THIS ISSUE. I AM WAITING FOR A REPLY I
WOULD LIKE TO KNOW IF OTHER PEOPLE HAVING THE SAME PROBLEM
WITH THEIR CAR OVER THIS ISSUE.

IN ADDICTION, MY CAR HAS BEEN RECALLED FOR WATER PUMP ISSUES AS
WELL. I HAVE HAD TO REPLACE THE WATER PUMP THREE TIMES. THE CAR
IS BEING RECALLED AGAIN IN REGARD TO THE WATER PUMP. THE WORK
TO REPAIR IT REQUIRES IT TO BE DONE IN TWO STAGES. THIS MEANS FIVE
WATER PUMP ISSUES. WHEN DOES A RECALL BECOME EXCESSIVE OVER
THE SAME ISSUE. THIS IS NONSENSE!

**Consumer No. 38:**
NHTSA ID Number: 11144967
Date of Incident:  February 27, 2018
Complaint Date:  November 2, 2018
Consumer Location:  BELTSVILLE, MD
Summary of Complaint:
VEHICLE BEGAN SHAKING, DRIVING VERY ROUGH AND CHECK ENGINE
LIGHT CAME AND EPC LIGHTS CAME ON THE DASH. CAR WAS NOT
DRIVABLE. THIS HAPPENED LESS THAN TWO MONTHS AFTER I HAD THE
WATER PUMP REPLACED FOR LEAKAGE AND FAILURE (WHICH HAS NOW
BEEN RECALLED). I BELIEVE THE TWO ARE CONNECTED, BUT AUDI
CHARGED ME A TO REPLACE THE ENGINE. I FEEL THAT THE ENGINE
FAILURE WAS A DIRECT LINK TO THE ISSUE WITH THE PUMP

**Consumer No. 39:**
NHTSA ID Number: 11176349
Date of Incident:  January 29, 2018
Complaint Date:  February 11, 2019
Consumer Location:  FALCON, CO
Summary of Complaint:
2011 AUDI Q5 COOLANT PUMP REPLACED DUE TO SEEPAGE. WATER PUMP,
BOLTS AND O RING FOR PLASTIC PIPE CONNECTOR PIECE. FOUND DURING
THE OIL CONSUMPTION REPAIRS AT 74K MILES.

**Consumer No. 40:**
NHTSA ID Number: 11270153
Date of Incident:  September 23, 2019
Complaint Date:  October 22, 2019
Consumer Location:  MINT HILL, NC
Summary of Complaint:
AFTER AUDI REPAIR THE SECONDARY WATER PUMP DUE TO RECALL
MONTHS LATER CAR THERMOSTAT RUNNING HOT AND AUDI STATES
MAIN WATER PUMP LEAKING

**Consumer No. 41:**
NHTSA ID Number: 11292116
Date of Incident:  December 1, 2019
Complaint Date:  December 30, 2019
Consumer Location:  RAYNHAM, MA
Summary of Complaint:
TL* THE CONTACT OWNS A 2012 AUDI A5. WHILE OPERATING THE
VEHICLE, THE CHECK ENGINE INDICATOR ILLUMINATED. THE VEHICLE
WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE
WATER PUMP WAS FAULTY. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER AND AUDI OF SHREWSBURY (780 BOSTON TURNPIKE,
SHREWSBURY, MA) WERE NOTIFIED OF THE FAILURE, BUT NO ASSISTANCE
WAS OFFERED. THE FAILURE MILEAGE WAS 115,000.

**Consumer No. 42:**
NHTSA ID Number: 11320334
Date of Incident:  August 22, 2019
Complaint Date:  April 6, 2020
Consumer Location:  Unknown
Summary of Complaint:
* THE CONTACT OWNS A 2014 AUDI A6. CONTACT STATED THAT WHILE
DRIVING AT 40 MPH, THE VEHICLE LOSS MOTIVE POWER AND JERKED
WITH THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT
ALSO MENTIONED AN ABNORMAL ODOR INSIDE THE VEHICLE. THE
CONTACT VEERED TO THE SHOULDER OF THE ROADWAY, TURNED THE
VEHICLE OFF AND BACK ON WHICH FAILED TO RESUME BACK TO
NORMAL. THE CONTACT DEPRESSED THE ACCELERATOR WHICH FAILED
TO EXCEED 40 MPH. THE VEHICLE WAS TAKEN TO RIDGELAND AUTO
WORLD (750 RIDGEWOOD RD, RIDGELAND, MS 39157, (601) 899-8500), WHERE
THE VEHICLE WAS DIAGNOSED HOWEVER, THE MECHANIC WAS UNABLE
TO DUPLICATE THE FAILURE. THE VEHICLE WAS THEN TAKEN TO AN
INDEPENDENT MECHANIC WHO DIAGNOSED THE VEHICLE, AND
DETERMINED THAT THE WATER PUMP AND A LEAKING FUEL LINE NEEDED
TO BE REPLACED WHICH WAS STILL PENDING. THE VEHICLE WAS NOT
INCLUDED IN NHTSA CAMPAIGN NUMBER: 17V781000 (FUEL SYSTEM,
GASOLINE). THE MANUFACTURER WAS MADE AWARE OF THE FAILURE.
THE APPROXIMATE FAILURE MILEAGE WAS 109,000

**Consumer No. 43:**
NHTSA ID Number: 10882444
Date of Incident:  June 2, 2016
Complaint Date:  July 4, 2016
Consumer Location:  EL PASO, TX
Summary of Complaint:
THE VEHICLE STOPPED AT THE HIGHWAY AT AROUND 65MPH DUE TO

COOLANT LEAK/WATER PUMP LEAK. EMERGENCY STOP TO THE SIDE OF THE ROAD WAS NECESSARY AS WELL AS VEHICLE TOWING. ILLUMINATOR LIGHT TO TURN OFF ENGINE WAS ON. WEATHER CONDITIONS AT 100+ FAHRENHEIT HAD POTENTIAL OF DANGEROUS SITUATION IF I WOULD HAVE HAD MY LITTLE ONES.

**Consumer No. 44:**
NHTSA ID Number: 11011896
Date of Incident:  July 17, 2017
Complaint Date:  August 1, 2017
Consumer Location:  MORENO VALLEY, CA
Summary of Complaint:
AUDI ALONG WITH VOLKSWAGEN, EQUIPPED WITH THE 2.0L ENGINE HAS ONE OF THE HIGHEST WATET PUMP FAILURE RATE. I HAVE CONDUCTED SOME RESEARCH AND THERE IS NUMEROUS ACCOUNTS IN BLOGS/VLOGS AND YOUTUBE OF INDIVIDUALS GIVING PERSONAL STATEMENT ON THEIR "WATER PUMP" MISFORTUNE. I PERSONALLY OWN A AUDI A5 WITH 54,000 MILES AND I'M JUST ONE OF THOUSANDS OF STATISTICS THAT HAVE GONE THROUGH THE "WATER PUMP" TRAUMA. I HAVE CROSSED REFERENCED SEVERAL RECALL WEBSITES AND ACCORDING TO AUDI AND VOLKSWAGEN RECALLS TOWARDS THESE PUMPS HAVE NEVER BEEN ISSUED. NOW THAT IS SCARY!!!

ABOUT A YEAR AND HALF AGO WHILE MY AUDI WAS STILL UNDER WARRANTY I NOTICED COOLANT LOST, THE AUDI DEALERSHIP TOPPED IT OF AND SEND ME ON MY WAY. A SECOND TIME WHILE STILL UNDER WARRANTY I VISITED AUDI DEALERSHIP AND EXPRESSED MY CONSERNS WITH LOW COOLANT LEVEL AND ONCE AGAIN IT WAS TOPPED OFF, I WAS GIVEN A MEDIOCRE ANSWER, I WAS RESPECTFUL CALLED "SR" AND DROVE OFF. SO FROM TIME TO TIME I WOULD ADD COOLANT AND THOUGHT NOTHING OF IT. SUMMER OF 2017 IS WHEN I WAS DRIVING HOME AFTER A DAY OF HIKING WHEN I NOTICE A LOST OF COOL AIR, MY A/C QUIT WORKING AND MY TEMPERATURE GAUGE WAS PAST THE MIDPOINT LEVEL. AT THIS POINT I WAS SECONDS WAY FROM HOME SO I WAS RELIEFED.TURNED OUT THE PUMP GAVE OUT, MY COOLING FLUID HAD EVAPORATED AND MY WARNING LIGHT NEVER CAME ON. PERHAPS AUDI DEALERSHIP DID NOT SEE TRACES OF COOLANT AT THE FIRST VISIT AND SECOND INSPECTION. PERHAPS THE DEALERSHIP WAS NOT AWARE OF THESE FAULTY PUMPS OR PERHAPS I NEGLECTED TO PLAY THE MECHANIC/SERVICE PERSONAL/PROFESSIONAL. HOWEVER ACCORDING TO AUDI A SB SERVICE BULLETIN RELEASED ON JULY 11, 2013 STATES AS FOLLOWS "COOLANT LEAK AT CONNECTION OF WATER PUMP AND HOSE LEADING TO THE HEATER CORE", ATTACHED IS THE BULLETIN. I WOULD GREATLY APPRECIATE YOU GUYS LOOKING INTO THIS MATTER.

THANK YOU

MIGUEL

**Consumer No. 45:**
NHTSA ID Number: 11073862
Date of Incident:  January 13, 2017
Complaint Date:  February 20, 2018
Consumer Location:  FORT WAYNE, IN
Summary of Complaint:
WATER PUMP BROKEN AT 39,000 MILES. BROKEN PLASTIC PROPELLER.
CAR STARTED "BUCKING" AS I PULLED IN TO GET IT INSPECTED. I WAS
ADVISED THAT THE CAR WAS NOT DRIVABLE...WATER PUMP FAILURES
ARE SITED ON THE INTERNET BY MANY. I HAVE TALKED TO AUDI
CUSTOMER SERVICE WITHOUT SUCCESS. AUDI OWNERS REPORT THAT
THEY HAVE BEEN GIVEN PAYMENT FOR THE PUMP AND EXTENDED
WARRANTY. PLEASE ADVISE WHAT OPTIONS I HAVE IN THIS SITUATION

## F.  **Defendants' Warranty Practices**

65.     Despite longstanding knowledge of the Defect as set forth above, Defendants

refuse to provide warranty coverage for the repairs when the Defect manifests.

66.     For the Audi-branded Class Vehicles, Defendants provided a 4-year/50,000-mile

New Vehicle Limited Warranty.

67.     For the model year 2015 to model year 2017 Volkswagen-branded Class

Vehicles, Volkswagen provided a 3-year/36,000-mile New Vehicle Limited Warranty, and a 5-

year/60,000-mile powertrain warranty.

68.     For the model year 2018 to model year 2019 Volkswagen-branded Class

Vehicles, Defendants provided a 6-year/72,000-mile New Vehicle Limited Warranty.

69.     For the model year 2020 Volkswagen-branded Class Vehicles, Defendants

provided a 4-year/50,000-mile New Vehicle Limited Warranty.

70.     Nevertheless, when Class members seek warranty coverage for the Defect, even

within the warranty period, Defendants often fail to respond or deny warranty coverage.

71.     Moreover, some Class Vehicles manifest the Defect just outside Defendants' warranty period. But the mileage and temporal limitations Defendants impose on their warranties are unconscionable and unenforceable.

72.     Defendants provide these Limited Warranties to buyers after a purchase is complete. Buyers like Plaintiffs and Class members lack pre-sale knowledge of the Defect or the ability to bargain as to the terms of the Defendants' warranties.  Accordingly, the limitations Defendants imposes on the Limited Warranties—and their efforts to disclaim any implied warranties—are procedurally unconscionable because there was unequal bargaining power between Defendants and Plaintiffs and the other Class members, as, at the time of purchase, Plaintiffs and the other Class members had no other options for purchasing from Defendants alternative warranty coverage for Class Vehicles.

73.     All of the purported limitations on the warranties, including the time and mileage limits are also substantively unconscionable. Defendants knew Class Vehicles suffered from the Defect and would continue to pose safety risks after the warranties purportedly expired, yet failed to disclose the Defect to Plaintiffs and the other Class members while continuing to market Class Vehicles as safe and reliable.  Defendants' enforcement of those limitations is thus harsh and shocks the conscience.

74.     Defendants' efforts to evade their warranty obligations with respect to the known Defect, coupled with their refusal to cover the Defect if it manifests outside the warranty's stated term, deprives Plaintiffs and Class members of the benefit of their bargain, forcing them to pay out of pocket to repair a defect present in Class Vehicles at the time of purchase.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following

class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed

nationwide class is defined as follows:

> **Nationwide Class:**
> All persons or entities in United States who are current or former owners and/or lessees
> of a Class Vehicle (the "Nationwide Class").

76.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P.

23(c)(5), Plaintiffs seek to represent the following state subclasses:

> **California Subclass:**
> All persons or entities who are: (1) current or former owners and/or lessees of a Class
> Vehicle; and (2) reside in California or purchased a Class Vehicle for primarily personal,
> family or household purposes, as defined by California Civil Code § 1791(a), in
> California.

77.     Together, the Nationwide Class and the state Subclasses shall be collectively

referred to herein as the "Class."

78.     Excluded from the Class are Defendants, their affiliates, employees, officers and

directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s)

assigned to this case.  Plaintiffs reserve the right to modify, change or expand the Class

definitions after conducting discovery.

79.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of

all members is impracticable. While the exact number and identities of individual members of

the Class is unknown at this time, such information being in the sole possession of Defendant

and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that tens of

thousands of Class Vehicles have been sold and leased throughout the United States, including

thousands within each of the state Subclasses.

80.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common

questions of law and fact exist as to all members of the Class. These questions predominate over

the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.  whether the Class Vehicles are predisposed to the Defect;

    b.  whether Defendants knowingly failed to disclose the existence and cause of the Water Pump Defect;

    c.  when Defendants first learned of the Water Pump Defect;

    d.  whether Defendants conduct constitutes a violation of the state consumer protection statutes asserted herein;

    e.  whether Defendant's conduct violates the Magnuson-Moss Warranty Act;

    f.  whether Defendants' conduct constitutes a breach of express warranty;

    g.  whether Defendants' conduct constitutes a breach of implied warranty;

    h.  whether Defendants' conduct constitutes common law fraud;

    i.  whether Defendants' conduct constitutes unjust enrichment; and

    j.  whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

81.   <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased or leased a Class Vehicle with the Water Pump Defect. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

82.   <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel that

are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

83.    Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

84.    Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

## **FIRST CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of the California Class)**

85.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86.     Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

87.     Defendants are persons as that term is defined in California Civil Code § 1761(c).

88.     Plaintiffs and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d).

89.     Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

   a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

   (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

   (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

   (a)(9) Advertising goods and services with the intent not to sell them as advertised.

90.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing

public, and imposed a serious safety risk on the public.

91.     Defendants knew that the Class Vehicles were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

92.     Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles because:

a.   Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

b.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until manifestation of the Defect;

c.   Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect; and

d.   Defendants actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiffs and Class Members that their vehicles were not defective.

93.     In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

94.     The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have

purchased or leased the Class Vehicles or would have paid less for them.

95.     On or about May 12, 2021, Plaintiffs provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) and seek only injunctive relief at this time. Once the 30-day notice period expires, Plaintiffs will amend this Complaint to seek monetary damages.

96.     Plaintiffs' and the other Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

97.     Therefore, Plaintiffs and the other Class Members seek all relief available under the CLRA.

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200)**
**(On Behalf of the California Class)**

98.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

99.     Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

100.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

101.     Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result

of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the Defect.

102.    The defective water pumps constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

103.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiffs and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

104.    The injuries suffered by Plaintiffs and the Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.

105.    Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

106.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## THIRD CAUSE OF ACTION

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, et seq.)**
**(On Behalf of the California Class)**

107.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

108.    Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

109.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

110.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

111.    Defendants have violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

112.    Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class Members

relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with defective water pumps that can cause catastrophic engine failure. Had Plaintiffs and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

113.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

114.    Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class Members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -**
**BREACH OF EXPRESS WARRANTY**
**(Cal. Civ. Code §§ 1791.2 & 1793.2(d))**
**(On Behalf of the California Class)**

115.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

116.    Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

117.    Plaintiffs and the other Class members who purchased or leased the Class

Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

118.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

119.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

120.    Defendants made express warranties to Plaintiffs and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

121.    Plaintiff and other Class members have requested repairs of the Defect pursuant to the express warranty, but have failed to receive such repairs.

122.    Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

123.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -
BREACH OF IMPLIED WARRANTY
(Cal. Civ. Code §§ 1791.2 & 1792)
(On Behalf of the California Class)**

124.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

125.    Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

126.    Plaintiffs and the other Class members who purchased or leased the Class

Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

127.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

128.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

129.    Defendants impliedly warranted to Plaintiff and the other Class Members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

130.    However, the Class Vehicles do not have the quality that a reasonable purchaser would expect.

131.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; and (4) conform to the promises or affirmations of fact made on the container or label.

132.    The Class Vehicles would not pass without objection in the trade because of the defect.

133.    The Class Vehicles are not fit for the ordinary purpose for which they are used because of the defect.

134.    The Class Vehicles do not conform to the promises or affirmations of fact made by Defendants.

135.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the defect. The existence of the defect has caused Plaintiff and the other Class members to not receive the benefit of their bargain and have caused Class

Vehicles to depreciate in value.

136.    As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of the Class Vehicles.

137.    Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

138.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class members are entitled to costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class Or, Alternatively, the California Class)**

139.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

140.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and/or the California Class against Defendants.

141.    Defendants provided Plaintiffs and class members with the express warranties set forth above.

142.    Specifically, Defendants warranted that the Class Vehicles were free from defects in materials or workmanship; and that in the event the Class Vehicles suffered from defects in either of these respects, Defendants would correct such defects at no cost to Plaintiffs or class

members.

143.    The Class Vehicles were not free from defects in materials or workmanship because they suffer from the Water Pump Defect.

144.    Defendants have refused to and continue to refuse to comply with the terms of their warranty to correct the defects outlined above.

145.    Plaintiffs have complied with their obligations under the express warranty at all times relevant herein.

146.    234.    As a result of Defendants' breach of express warranty, Plaintiffs and class members have suffered damages.

147.    Defendants' conduct was done knowingly, wantonly, maliciously and/or in conscious disregard for the rights of Plaintiffs and the class, justifying the imposition of punitive damages.

<u>**SEVENTH CAUSE OF ACTION**</u>

**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the Nationwide Class Or, Alternatively, the California Class)**

148.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

149.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and/or the California Class against Defendants.

150.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

151.    Defendants provided Plaintiffs and the other Class members with an implied

warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffer from the Water Pump Defect, which causes the vehicles to experience premature and catastrophic engine failure. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

152.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not experience premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

153.    Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from manufacturing defect(s).

154.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### EIGHTH CAUSE OF ACTION

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(On Behalf of the Nationwide Class Or, Alternatively, the California Class)**

155.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

156.    Plaintiffs bring this claim on behalf of themselves and on behalf of the

Nationwide Class and/or the California Class against Defendants.

157.    Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(3).

158.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C.

§§ 2301(4)-(5).

159.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. §

2301(1).

160.    The warranties described above are "written warranties" within the meaning of 15

U.S.C. § 2301(6).

161.    Defendants breached the express warranties by:

a.    Providing warranties with the purchase or lease of the Class Vehicles, thereby

warranting to repair or replace any part defective in material or workmanship at

no cost to the owner or lessee;

b.    Selling and leasing Class Vehicles that were defective in materials and/or

workmanship, requiring repair or replacement within the warranty period; and

c.    Refusing and/or failing to honor the express warranties by repairing or replacing,

free of charge, the component parts in order to remedy the Water Pump Defect.

162.    Plaintiffs and the other Class Members relied on the existence and length of the

express warranties in deciding whether to purchase or lease the Class Vehicles.

163.    Defendants' breach of the express warranties has deprived Plaintiffs and the other

Class Members of the benefit of their bargain.

164.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the

sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

165.    Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class Members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

166.    As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## NINTH CAUSE OF ACTION

### COMMON LAW FRAUD
**(On Behalf of the Nationwide Class Or, Alternatively, the California Class)**

167.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

168.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and/or the California Class against Defendants.

169.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the Water Pump Defect, which was not readily discoverable until years later, often after warranty

period expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Defect and all of the resultant problems.

170.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class Members rely on them.

171.    Plaintiffs and the Class Members reasonably relied on these omissions and suffered damages as a result.

## TENTH CAUSE OF ACTION

### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class Or, Alternatively, the California Class)**

172.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

173.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class and/or the California Class against Defendants.

174.    Plaintiffs and members of the Class conferred a benefit on Defendants. Although Plaintiffs purchased the Class Vehicles from Defendants' authorized dealerships, the money Plaintiffs used to purchase the Class Vehicles flowed from Defendants' authorized dealerships to Defendants.

175.    Defendants had knowledge that this benefit was conferred upon them.

176.    Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect; and to correct their advertising and marketing practices as described herein;

F.    award reasonable attorney's fees and costs; and

G.    grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 14, 2021

Respectfully submitted,

*/s/ Matthew D. Schelkopf*
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312

Tel: (610) 200-0581
Facsimile: 610-421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs and the putative Class*